52 CCPA

**Application of Robert M. SMITH and Frederick C. Haigh.**

**Patent Appeal No. 7399.**

United States Court of Customs and Patent Appeals.

July 1, 1965.

Francis C. Browne, William E. Schuyler, Jr., Andrew B. Beveridge, Charles S. Lynch, Joseph A. DeGrandi, Washington, D. C., for appellants.

Clarence W. Moore, Washington, D. C. (J. E. Armore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

WORLEY, Chief Judge.

This is an appeal from the decision of the Board of Appeals affirming the examiner's rejection of claims 2 and 4–7 in appellants' patent application [1] for "Ultra-violet Light-Absorbing Resins and Containers Coated Therewith."

1. Serial No. 68,363, filed November 10, 1960.

The nature of the subject matter involved is reflected in claim 2:

2. An ultraviolet light-absorbing reaction product of an epoxy resin with an organic amine curing agent for said epoxy resin in the presence of from 0.01 to 10 weight per cent of a hydroxybenzophenone based on the weight of said epoxy resin wherein said hydroxybenzophenone has the formula:

where A is H,     —OH, or —OR
    B is H or —OH and
    C is —OH or —OR

where R is an alkyl group having from one to eight carbon atoms, the reaction being effected by intimately admixing said epoxy resin, said amine curing agent and said hydroxybenzophenone and allowing reaction to take place.

It appears from the record that a number of substituted hydroxybenzophenones have been used as ultraviolet light-absorbers in the stabilization of a wide variety of plastics. Appellants assert in their specification that if certain hydroxybenzophenone ultraviolet light-absorbers, delineated above in claim 2, are incorporated in an epoxy resin along with an organic amine curing agent for the epoxy, there is produced upon reaction of the epoxy and curing agent a cured resin which has "pronouncedly higher absorption for ultraviolet and near ultraviolet rays" than would be expected from a consideration of the absorption characteristics of the benzophenone compound alone or when placed in other resins. The specification states that while it is not definitely known whether the benzophenone compound reacts with the amine curing agent so as to chemically change the benzophenone compound, it appears as a "distinct possibility" since the ultraviolet absorption of the cured epoxy resin-amine-benzophenone mixture is quite high. Appellants propose to utilize their epoxy compositions to coat such articles as glass containers to protect the contents of the container against deleterious effects of ultraviolet light.

The references are:

| | | |
|---|---|---|
| Greenlee | 2,585,115 | February 12, 1952. |
| Hardy et al. | 2,976,259 | March 21, 1961. |

The examiner rejected the claims as unpatentable over Hardy in view of Greenlee. He noted that Hardy discloses the benzophenone compounds employed by appellants. According to Hardy, the compounds are useful as ultraviolet light absorbers in a "tremendous array of suitable synthetic resin carrier materials."[2] Among the resins mentioned by Hardy are "epoxy resins as exemplified by the condensates of epichlorohydrin with bis-phenol." While Hardy does not disclose specific curing agents for the epoxy resin or many other resins disclosed, he states that

The preparation, shaping, *curing*, extrusion, calendering, casting, molding or other forming of these resins is well understood by those skilled in the art and accordingly need not be detailed here. * * * [Emphasis supplied].

Hardy describes his compositions as "purely physical mixtures inasmuch as no reaction takes place between the hydroxylated benzophenone ethers and the carrier materials."

2. In their brief here, appellants state that the near column-long list of resins set forth by Hardy "encompass literally hundreds, if not thousands, of different resins."

To fill the void present in Hardy with respect to a disclosure of specific curing agents, the examiner turned to Greenlee for his teaching that organic amines have long been used to cure epoxy resins. Since appellants concede in their specification that amine curing agents for epoxy resins are "well known," further discussion of Greenlee appears unnecessary, beyond noting that Greenlee found amine-cured epoxy resins to have "higher resistance to ultraviolet light (*minimum ultraviolet absorption*)." [Emphasis supplied].

Upon combining Hardy with either Greenlee or appellants' admission, the examiner found the claimed subject matter obvious to those of ordinary skill in the art. He dismissed appellants' argument that unexpected and synergistic results are obtained with the claimed composition by stating:

\* \* \* because the composition of the claims is taught by the art,

the argument urged by appellants that the composition is patentable in view of the increased ultraviolet light absorbency due to the presence of the amine curing agent, is moot.

The board rejected the examiner's position, and properly so. In re Huellmantel, 324 F.2d 998, 51 CCPA 845. Finding the compositions "clearly novel," the board regarded the question of unobviousness under 35 U.S.C. § 103 to become the decisive issue, and turned to a consideration of the data presented in Tables 1 and 2 of appellants' specification to determine whether the claimed subject matter meets the standards required by that statutory provision.

We interrupt our narrative of the proceedings below to present, in somewhat condensed tabular form, the data which appellants placed in their specification:

## % TRANSMITTANCE
### ABSORBER

| Wave Length Mu | Base Glass Alone | None | | B | | C | | D | | F | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Amine | Citric | Amine | Citric | Amine | Citric | Amine | Citric | Amine | Citric |
| 300 | 16.5 | 14.3 | 11.0 | 0.0 | 0.3 | 0.0 | 0.5 | 0.0 | 0.0 | 0.0 | 0.0 |
| 320 | 59.5 | 54.3 | 48.0 | 0.0 | 0.5 | 0.0 | 0.3 | 0.0 | 0.0 | 0.0 | 0.0 |
| 340 | 89.4 | 80.0 | 74.0 | 0.0 | 0.8 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| 360 | 91.0 | 87.6 | 83.1 | 0.0 | 38.2 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| 380 | 90.8 | 89.0 | 88.6 | 0.0 | 76.6 | 0.0 | 31.7 | 0.0 | 0.1 | 0.0 | 0.0 |
| 400 | 91.9 | 90.5 | 88.3 | 0.0 | 88.1 | 24.3 | 78.8 | 0.0 | 38.6 | 0.0 | 23.9 |

In general, the above table compares the per cent transmittance of ultraviolet light by certain epoxy resins as a function of wavelength[3] of the light as well as the particular material upon which the light impinges. The first column denotes the wavelength of light employed in the near ultraviolet range. The second column represents per cent transmittance of various wavelengths of ultraviolet light by a thickness of flint glass, a type of glass used in bottles. The two

columns headed "None" represent per cent transmittance by cured epoxy resins having no ultraviolet light absorber therein which are coated on the glass. The column under "None" headed "Amine" denotes results obtained with an amine cured epoxy resin coated on glass, while the column headed "Citric" denotes results obtained with a citric acid cured epoxy resin also coated on glass. It is seen that the amine cured resin absorbs less, and transmits more, ultra-

3. The wavelength range of so-called "vacuum" and "near" ultraviolet light extends from 100 mμ to 400 mμ.

violet light than does the citric acid cured resin.[4] Similarly, columns headed by B, C, D and F represent results obtained when four ultraviolet light absorbers within the scope of the appealed claims are placed in equal amounts in the amine and citric acid cured resins. Appellants state that one would expect from the above data in columns headed "None" that addition of equal amounts of benzophenones to the amine and citric acid cured epoxies would yield products having comparable light absorption capabilities—indeed, if anything, one would expect the amine cured resin to exhibit slightly poorer results in that regard. They urge that the data in columns B, C, D and F unexpectedly shows "just the opposite to be true, and the remarkable differences can only be expressed in terms of 'synergistic.'"

The board stated:

> In examining the above data, we find that while, as appellants contend, it shows that "ultraviolet light transmittance of epoxy resins is substantially unaffected by the presence of amines," and that the addition of substituted hydroxybenzophenone to an amine-cured epoxy resin produces increased ultraviolet light absorbency, it fails to show, by means of comparative data, what the effect would be when hydroxybenzophenone is added to the epoxy resin, *per se*, i. e., epoxy resin not cured by amine, such as disclosed, for example, in Hardy et al. There is nothing in the record to show that the addition of hydroxybenzophenone to an amine-cured resin produces improved results, with respect to ultraviolet light absorbency as compared to the Hardy et al. composition, which omits the amine curing agent.

> In the absence of such a comparative showing, we are of the opinion that appellants have not sustained

their burden of persuasion that the claimed combination produces unexpected and synergistic results.
\* \* \*

In a decision on reconsideration, the board amplified its earlier holding:

> We see no distinction in the "epoxy resins" used in Hardy et al, as a carrier for the hydroxybenzophenone, and appellants' "epoxy resins" to which they add amine curing agents. If the Hardy et al. "epoxy resins" must have contained a curing agent, as appellants contend, then appellants' "epoxy resins" must have also contained another curing agent, in addition to the amine, which would reflect on appellants' contention that there is a "synergistic" action between amine-cured epoxy resins and the hydroxybenzophenone compound.

Appellants argue the board erred in requiring submission of data establishing the effect of adding benzophenones to *uncured* epoxy resin, particularly in absence of convincing reasons why that data is necessary to establish the efficacy of the amine cured epoxy resins containing benzophenones. We agree with appellants, since we see little, if any, relevance such a showing would have to the herein *claimed* subject matter. While Hardy does not specifically mention an amine curing agent for the epoxy resins disclosed by him, it is believed apparent that he contemplates placing the disclosed benzophenones in a cured[5] epoxy resin of some sort. As appellants point out, epoxy resins in the uncured state are liquids and thermoplastic solids, and require curing agents to crosslink them into three-dimensional structures. We think appellants have presented a fair comparison of their claimed compositions with other epoxy resins in the cured state which contain the same ultraviolet light absorbing compounds, both

---

4. Those results appear consonant with the statement of Greenlee, earlier noted, that amine cured epoxies have minimum ultraviolet absorption.

5. The record shows there are many known curing agents for epoxy resins other than amines, such as alkali metal hydroxides, various organic acids and acid anhydrides, boron trifluoride, and the like.

being encompassed within the very broad disclosure of Hardy.

Weighing the evidence in the record before us, we are satisfied the claimed subject matter as a whole would not have been obvious to one of ordinary skill.

The decision is reversed.

Reversed.